## JACOB VAN RHEE v. STEPHEN DYSERT AND OTHERS.[1]

December 15, 1922.

No. 23,189.

**Showing necessary in order to vacate judgment for want of jurisdiction.**

1. In order to authorize the vacation of a judgment for want of jurisdiction, where the summons has been served by publication after the sheriff had duly returned that the defendant could not be found in the county and plaintiff's attorney had filed the proper affidavit that he could not be found in the state, the showing must be that defendant not only was resident in the state, but that plaintiff, in the location and situation he was, could by due diligence have found defendant in the state.

**Finding not sustained.**

2. The finding of the court that plaintiff by due diligence could have found defendant when the summons was served by publication is not sustained.

[1]Reported in 191 N. W. 53.

Defendant Dysert, appearing specially for that purpose, made application to the district court for Mille Lacs county to set aside the judgment in this action decreeing plaintiff to be the owner in fee of the land described in the judgment free and clear of any claim of said Dysert or of the other defendants. The matter was heard by Roeser, J., who made findings and granted defendant the relief prayed for. From the order setting aside the judgment as to Thomas Dysert, plaintiff appealed. Reversed.

*E. L. McMillan,* for appellant.

*C. J. Cahaley* and *C. P. Kleinman,* for respondent.

HOLT, J.

The appeal is from an order vacating a judgment for want of jurisdiction over the respondent, Thomas Dysert.

Stephen Dysert, the father of respondent, died intestate in 1896 owning 80 acres of land in Mille Lacs county, this state. The estate was probated and an undivided one-fifth decreed to respondent. In the year 1899, after three of the children conveyed interests in the land to M. M. Ring, all the heirs of Stephen Dysert disappeared from Mille Lacs county. In May, 1899, plaintiff bid in the land at a forfeited real estate tax judgment sale and immediately went into possession, cultivated and improved the same. He also obtained a conveyance from M. M. Ring,

This action to determine the adverse claims of the defendants to the land, alleged to be in plaintiff's possession, was begun February 23, 1909, when the complaint and lis pendens were duly filed. Service of summons was made upon respondent by publication. Judgment was entered May 12, 1909, and a certitfied copy at once recorded in the office of the register of deeds of Mille Lacs county. On the face of the records jurisdiction of respondent was acquired. The sheriff's return is: "That after due and diligent search he had been unable to find the defendants or either of them within his county and the defendants aforesaid and each of them cannot be found within said Mille Lacs County." And plaintiff's attorney, prior to the publication of the summons, filed an affidavit in the action which states "that he believed that each of the defendants is

not a resident of the state of Minnesota and cannot be found therein and that the residence of each of said defendants was not known to affiant." Upon the hearing of the motion to vacate the judgment many affidavits were offered as to the whereabouts of respondent and as to the possibility of obtaining personal service upon him at the time in question. Therefrom the court made findings of fact, the one of controlling importance being "that said defendant, at the time of the commencement of said action and for a long time prior thereto and ever since said time has been and still is an actual bona fide resident of the state of Minnesota, and that his residence might have been ascertained at all of such times by the exercise of due diligence."

Is the quoted finding sufficiently sustained by the affidavits? The statute permits service of summons by publication "when the subject of the action is real or personal property within the state, in or upon which the defendant has or claims a lien or interest, or the relief demanded consists wholly or partly in excluding him from any such interest or lien" (subdivision 5, § 7738, G. S. 1913), and "when the sheriff of the county in which the action is brought shall have duly determined that the defendant cannot be found therein and an affidavit of the plaintiff or his attorney shall have been filed with the clerk, stating * * * that he believes the defendant is not a resident of the state, or cannot be found therein, and either that he has mailed copy of the summons to the defendant at his place of residence, or that such residence is not known to him, service of the summons may be made by three weeks' published notice thereof" (section 7737).

From the memorandum of the learned trial court it is to be inferred that he construed the statute to the effect that, if respondent was in the state and not in actual hiding but so that his whereabouts could be found by relations of defendant or persons residing at any place in the state, service by publication cannot be had. We think the statute means that after the sheriff has determined and returned that defendant cannot be found in the county and the proper affidavit has been made by plaintiff or his attorney that defendant cannot be found in the state, the service of summons by

publication is valid and gives jurisdiction, unless it be shown that plaintiff or his attorney by the use of ordinary diligence could have ascertained where defendant could be found. That is, after plaintiff and his attorney have used due diligence in making a search for defendant without being able to locate him in the state and he is not in the county, then the affidavit can be said to be made in good faith that he cannot be found in the state, and jurisdiction of him may be obtained by publication of the summons.

It is submitted that plaintiff's showing of diligent search and inability to find respondent in the state is well nigh conclusive, and that respondent's showing to the contrary states no fact furnishing even an inference that plaintiff or his attorney could have found him in the state. In 1899 plaintiff obtained two judgments against respondent in the district court of Mille Lacs county, one for $54.31, and one for $395.45. He had been unsuccessful in his endeavors to collect the same. These judgments were about to outlaw in 1909 when this action was begun. It is reasonable to suppose that plaintiff then had a purpose in seeking information of the whereabouts of respondent on that score. And he so states in his affidavit. He made repeated inquiries of numerous persons and at different places in the county. He went to Elmer Chapman, whom he heard was a distant relative of the Dysert family, but could get no trace. His affidavit is that he often inquired of the sheriff of the county, of the attorney for defendant in the cases where he obtained the said judgments, and his own attorneys in said suits. He also sought information touching the whereabouts of respondent from the several county officers and at various places of business in Princeton, Foreston and Milaca, in said county, without ever obtaining any clue as to where he or any one of the Dysert heirs had gone. He is corroborated in this by the affidavit of Elmer Chapman, distantly connected by marriage with the father of respondent, who was at one time register of deeds and lived in Princeton until 1908, when he removed to St. Cloud; also by the affidavit of Harry Shockley, the sheriff of the county ever since 1904, a resident for many years before and of wide acquaintance in the county, and who at the request of plaintiff had made particular inquiry for respondent and

his family. We think these affidavits reveal an unusually diligent search and also an urgent motive therefor. That plaintiff, four years after the entry of the judgment, found and obtained deeds from some of Stephen Dysert's heirs is of little significance.

It appears from the affidavit of Oliver J. Dysert, a brother of respondent, that he has lived in Minneapolis the past 20 years. He does not state that any one with whom plaintiff or his attorney might have come in touch knew that he lived there. He also states that, on a visit to Duluth in 1908, he met respondent, but gives no place of residence of the respondent, merely saying that his address could have been had from the Hod Carriers Union at Duluth. How plaintiff could have obtained an inkling that by applying to this union respondent might be found, is not disclosed.

Another affidavit, made by a sister of respondent, says she has lived at Anoka the past 16 years. She says that when respondent left the farm he went to Minneapolis for a year or so, then to Aitken, back to Minneapolis, and then to St. Louis county; that ever since 1903 he has lived either at Duluth, Virginia or Ely working spring and summer in or about Duluth and in winter months in the woods; that her brother Oliver met respondent in Duluth on his visit to that place in 1908, as she was told by Oliver; and that, if inquiry had been made of her, information could have been obtained to locate respondent. But she ventures no facts from which it can be inferred that plaintiff could have found her whereabouts or respondent's. It also appears that a now deceased sister of respondent lived at Fergus Falls in 1909, but there is the same absence of any facts that could have led plaintiff to that place for information. The same may be said of the affidavit of Bloomerson, a traveling trader of Ely, who on his business trips to the lumber camps saw respondent working for different loggers between 1905 and 1913.

The affidavit of respondent, merely adopts the affidavits of his brother, sister and Bloomerson, but he fails to state where he could have been found when this action was begun and the summons was being published, and fails to state any fact going to show that there was any possibility at that time for plaintiff or his attorney to have

found him. He does not claim that since 1899 he had ever been in Mille Lacs county or has had any friend or acquaintance there from whom plaintiff could have obtained a trace of him. He does not claim that he has ever taken the slightest interest in the property or paid a cent in taxes, and did not know that in the meantime this land was being improved and parceled out in small tracts and is now occupied by the many homes of an unorganized village community. We think the showing by respondent is altogether too meagre upon which to predicate a finding that by due diligence plaintiff or his attorney could have found him so as to make personal service.

Respondent relies upon Arnold v. Visenaux, 129 Minn. 270, 152 N. W. 640. It is not a parallel case. There the defendant was temporarily within the county when the sheriff made his return that he could not be found therein. He also had a permanent home in Carlton county. There was no showing of any diligence or search either by the sheriff or the plaintiff or his attorney except as appeared from the sheriff's return and the affidavit for publication of summons made by plaintiff's attorney. No other finding than the one there made could have been sustained. In this case there is no pretence that in 1909 respondent had acquired any home or had any place where he usually abode, and the showing of diligence was convincing.

Having reached the conclusion that the showing did not justify a vacation of the judgment, it is not necessary to consider whether section 7787, G. S. 1913, shields it from attack, since a duly certified copy thereof had been recorded in the office of the register of deeds of Mille Lacs county more than five years prior to notice of this motion to vacate, or any other question raised in the appeal.

The order is reversed.